# Court of Appeals
## Tenth Appellate District of Texas

---

### 10-25-00035-CR

---

Maricella Garcia,
Appellant

v.

The State of Texas,
Appellee

---

On appeal from the
19th District Court of McLennan County, Texas
Judge Thomas C. West, presiding
Trial Court Cause No. 2021-1215-C1

---

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

A jury found Appellant, Marisela Garcia, guilty of two counts of the felony offense of injury to a child. The jury assessed Garcia's punishment at confinement for life on the first count and twenty years' confinement on the second count. The trial court sentenced her accordingly. This appeal ensued. We affirm the judgment of the trial court in Count I and vacate the judgment of the trial court in Count II.

## A. Background

Garcia is the stepmother of K.V. In 2014, when K.V. was five years old, she started living with Garcia. Over the next six years, K.V. testified that Garcia both physically and emotionally abused K.V. in various ways. K.V. stated that Garcia repeatedly hit K.V. with various objects, leaving scars and marks on her body and head. Garcia would strike K.V.'s feet with rocks. K.V. also stated that Garcia would punish her for not working fast enough by hitting her hands with wood and using pushpins on her hands. Garcia would make K.V. pick tree branches with spikes to then hit her with them. K.V. testified that Garcia would also choke her, pull her hair, and tell K.V. to get on the ground where Garcia would step on her. K.V. stated that she was not allowed to scream or "it would be worse." If K.V. screamed, Garcia would place her foot on K.V.'s throat and tell her to "shut up" and jump on her. K.V. stated that Garcia had also forced her to eat chilis and that Garcia starved K.V. and forced her to find food out of the trash. Garcia would also force K.V. to eat her own feces, as well as dog and cow feces, as punishment. Garcia would also make K.V. wet her clothes in water and wear them, despite the weather being cold. In addition to the physical abuse, K.V. testified that Garcia emotionally abused her. K.V. stated that Garcia isolated her from the rest of the family, told her that her dad was not her dad, and forced K.V. to call her dad by his

first name. Garcia told K.V. that she would never be part of their family and that she was an embarrassment. Garcia repeatedly told K.V. to kill herself, giving her suggestions as to how to do it. K.V. also testified that Garcia often took pictures of K.V. naked on her phone, and Garcia would threaten to send the pictures to men for them to come rape K.V. Garcia would also tell K.V. that she would send people to come kill her, or that Garcia would kill K.V. herself, if she ever spoke to anyone about what she was going through at home.

K.V.'s school counselor, Anne Trevino, testified that during her fourth-grade year, K.V. would always wear the same clothes to school, even though the clothes were dirty and too small for her. Trevino stated that on one occasion, she offered K.V. some clothes from the school's resources, and K.V. was very excited about the new clothes. However, K.V. brought the clothes back the next day and told Trevino that her stepmother would not allow her to keep the clothes. Trevino testified that Garcia requested a meeting, during which Garcia stated that K.V. had plenty of clothes but chose to wear the same dirty clothes. Trevino stated that Garcia also said K.V. lied, was dirty and gross, and made other derogatory statements about K.V. At the beginning of K.V.'s fifth-grade year, Trevino testified that she noticed K.V. had a black eye and reported the injury to Child Protective Services (CPS), but, to her knowledge, CPS did not investigate. K.V. testified that she lied about any

injuries because she feared repercussions from Garcia. During K.V.'s sixth-grade year, Trevino was made aware that K.V.'s younger sister told her teacher K.V. was sleeping outside. Trevino spoke with K.V., who would not confirm her sister's statements, but Trevino made another report to CPS anyway due to these allegations and the history she had observed. Again, Trevino stated that CPS did not follow up and that Garcia and K.V.'s father met with school administrators and again blamed K.V. for her appearance. Later that school year, K.V. was absent from school for a few days, which Trevino noted was unusual. When K.V. returned, Trevino observed that she had a black eye, some scratches, and other injuries. When Trevino talked to K.V. about her injuries, she initially claimed they were from an animal, but Trevino did not think the injuries were consistent with something caused by an animal. Trevino again called CPS.

CPS and police responded to the school, and K.V. eventually began to describe where she got the injuries and the history of physical and emotional abuse. K.V. was then taken to the hospital for an assessment. The forensic nurse who conducted the assessment observed that "there was not any part of [K.V.'s] body, from the bottoms of her feet to the top of her skull, that didn't have some sort of bruising, scarring, some sort of abnormality that children should not be subjected to."

B. Issue one: Sufficiency of the Evidence

In her first issue, Garcia contends that the evidence was insufficient to support the jury's finding that K.V. suffered a serious mental deficiency, impairment, or injury.

1. Standard of Review

The Court of Criminal Appeals has defined our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight

to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732–33 (Tex. Crim. App. 2018).

2. Authority

A person commits the offense of injury to a child if she intentionally or knowingly, by act or omission, causes a child: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury. *See* TEX. PENAL CODE ANN. § 22.04. An omission constitutes an offense if the actor has a legal or statutory duty to act or if the actor has assumed care, custody, or control of the child. *See id.*

The Texas Penal Code does not define "serious mental deficiency, impairment, or injury." We therefore give the statutory terms their plain and ordinary meanings. *See* TEX. GOV'T CODE ANN. § 311.011(a); *Edwards v. State*, 666 S.W.3d 571, 575 (Tex. Crim. App. 2023). This Court previously explained that the deficiency, impairment, or injury must be heightened or excessive. *Ex Parte Hammons*, 628 S.W.3d 335, 337 (Tex. App.—Waco 2021). The term "deficiency" by itself means "the quality or state of being deficient," which in turn means "lacking in some necessary quality or element," or "not up to a normal standard or complement." *Edwards v. State*, 666 S.W.3d 571, 575 (Tex. Crim. App. 2023) (citing Merriam-Webster's Collegiate Dictionary (11th ed. 2020)). "Impairment" means "diminishment or loss of function or ability." *Id.* Webster's Collegiate Dictionary also defines the phrase "mental deficiency" as "a deficiency in cognitive functioning, specifically, intellectual disability." *Id.*

3. Discussion

Garcia argues that the State failed to prove that K.V.'s PTSD or depression amounted to a serious mental deficiency, impairment, or injury. Specifically, Garcia compares the evidence in this case to evidence presented in *Edwards*, *Rodriguez*, and *Nawaz*, arguing that this case more closely resembles *Edwards* because the evidence is largely speculative or insufficient to support a finding of any actual mental harm. *See Edwards v. State*, 666

S.W.3d at 575; *Rodriguez v. State*, No. 10-21-00147-CR, 2023 WL 398689 at *12 (Tex. App.—Waco Jan. 25, 2024, pet. ref'd) (mem. op., not designated for publication); *Nawaz v. State*, No. 05-19-00092-CR, 2023 WL 5542625 at *3 (Tex. App.—Dallas Aug. 29, 2023) (mem. op., not designated for publication). In *Edwards*, the Court of Criminal Appeals held that while the State provided sufficient evidence to prove the child ingested a large amount of cocaine, it failed to provide sufficient evidence that the child actually suffered any of the theoretical side effects of cocaine ingestion about which the expert witness testified. *Edwards v. State*, 666 S.W.3d 571, 576 (Tex. Crim. App. 2023). In contrast here, the State presented evidence of concrete harm K.V. suffered as a result of Garcia's actions.

K.V. testified about the impact Garcia's actions had on her mental health. Trevino testified that as a result of Garcia's actions, K.V. has expressed suicidal ideations and experienced panic attacks, nightmares, anxiety, and depression. Additionally, Dr. Whitney Crowson diagnosed K.V. with PTSD, connected that diagnosis to her prolonged abuse, and described the ongoing emotional and psychological consequences of that trauma. *See Stuhler v. State*, 218 S.W.3d 706 (Tex. Crim. App. 2007) (a therapist's testimony that the complainant child's experience caused the child to suffer PTSD was sufficient evidence to establish serious mental deficiency, impairment, or injury). Dr.

Crowson's evaluations characterized K.V.'s history of prolonged psychological cruelty, neglect, and abuse as resulting in prolonged suffering and constituting "a chronic history of child torture." Dr. Crowson also described the lasting severity of K.V.'s symptoms. She testified that although K.V. tried to appear functional and healthy, she had "a lot of conflict, a lot of sadness, despair, anger, [and] confusion" beneath that outward appearance and that it would take her a long time to heal.

Garcia also argues that because K.V. was doing better at the time of trial, a rational jury could not reasonably infer the existence of a serious mental deficiency, impairment, or injury. However, improvement after the offense does not negate legally sufficient evidence that the injury occurred. *See Blea v. State*, 483 S.W.3d 29, 34 (Tex. Crim. App. 2016) ("The statute's plain language refers to the injury caused by the offender, and it does not require consideration of any medical treatment that may have lessened the impact of the injury."). The relevant inquiry is whether a rational jury could find beyond a reasonable doubt that K.V. suffered from a serious mental deficiency, impairment, or injury as a result of Garcia's conduct.

We must consider the cumulative force of all the evidence and defer to the jury's reasonable inferences. Looking at the foregoing evidence in the light most favorable to the verdict, a rational trier of fact could have found that

Garcia's actions caused serious mental injury to K.V. beyond a reasonable doubt.

Therefore, we overrule Garcia's first issue.

## C. Double Jeopardy

In her second issue, Garcia contends that her punishment under both counts violates double jeopardy principles. In count one, Garcia was convicted of injury to a child by act. In count two, Garcia was convicted of injury to a child by omission.

The Double Jeopardy Clause provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. AMEND. V. This guarantee was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 796, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969); *see also* U.S. CONST. AMEND. XIV.

A double jeopardy complaint may only be raised for the first time on appeal if "(1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate interest." *Garfias v. State*, 424 S.W.3d 54, 57-58 (Tex. Crim. App. 2014). There are three types of double jeopardy claims: (1) a second prosecution for the same offense after acquittal, (2) a

second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006). In determining whether there is a double-jeopardy violation in a case involving multiple violations of the same statute, the relevant inquiry is always whether the legislature intended to permit multiple punishments. *Loving v. State*, 401 S.W.3d 642, 646 (Tex. Crim. App. 2013); *see also Gonzales v. State*, 304 S.W.3d 838, 845 (Tex. Crim. App. 2010) ("[The Double Jeopardy Clause] also protects [a defendant] from being punished more than once for the same offense in a single prosecution.").

Injury to a child under Penal Code Section 22.04 is a result-oriented offense, and the legislature did not intend the act-versus-omission alternatives to constitute separate offenses. *See Villanueva v. State*, 227 S.W.3d 744, 748–50 (Tex. Crim. App. 2007). The State concedes that appellant's convictions violate the Double Jeopardy Clause. We agree. We hold that punishing the appellant in the same proceeding for injury to a child by act and injury to a child by omission violated her double-jeopardy protection.

The remedy is to retain the "most serious" offense—that is to say, the offense for which the sentencing entity assessed the highest punishment-and set aside the other. *Littrell v. State*, 271 S.W.3d 273, 279 (Tex. Crim. App. 2008).

We sustain Garcia's second issue and vacate the judgment of conviction for the second count, injury to a child by omission.

## D. Conclusion

We affirm the judgment of the trial court as to Count I. We vacate the judgment of the trial court as to Count II.

_____
MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED: July 23, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed and vacated
Do not publish
CRPM

